UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| OIL STATES SKAGIT SMATCO, LLC AND OIL STATES INDUSTRIES (THAILAND), LTD. | CIVIL ACTION |
| versus | NO. 09-4508 |
| TRAVIS P. DUPRE AND DONALD J. BROWN | SECTION "C" (3) |

## ORDER AND REASONS[1]

Before the Court is the defendants' Motion to Dismiss pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, alleging that this Court lacks personal jurisdiction and that the plaintiffs have failed to state a claim under the Computer Fraud and Abuse Act (18 U.S.C. § 1030) (the "CFAA"). (Rec. Doc. 26). In the alternative, the defendants Travis P. Dupre ("Dupre") and Donald J. Brown ("Brown") request that the Court dismiss the plaintiffs' claims pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, or in the alternative, to dismiss on the doctrine of *forum non conveniens*. *Id.* The plaintiffs Oil States Skagit SMATCO, LLC ("OSSS") and Oil States Industries (Thailand), Ltd. ("OSIT") oppose this motion. *Id.* Having considered the record, the memoranda of counsel, and the law, the Court has determined that it lacks subject matter jurisdiction for the following reasons.

### I. Background

The action consists of several breach of contract and tort claims against the defendants. (Rec. Doc. 1 at 7-13). The plaintiffs also assert claims under the Computer Fraud and Abuse Act

---

[1] Benjamin K. Probber, a second-year student at the University of Pennsylvania Law School, assisted in the preparation of this Order and Reasons.

1

(18 U.S.C. § 1030) (the "CFAA"). The plaintiffs allege that defendants Dupre and Brown were hired to help run the OSIT Thailand office, which was a division of OSSS incorporated under the laws of Thailand. *Id.* at 2. Dupre and Brown were given access to sensitive proprietary information concerning plaintiffs' processes and technologies in order to further OSIT's business interests. *Id.* The defendants each signed a Confidentiality and Nondisclosure Agreement that they allegedly breached when Dupre began secretly working for a competitor of OSIT, Thunder Oilfield Services (Thailand), Ltd. ("Thunder Oilfield"), and when both Dupre and Brown developed a scheme to divert a prospective contract from OSIT to Thunder Oilfield.[2] *Id.* at 4. The plaintiffs allege that OSIT's information management team discovered that Dupre deleted his OSIT emails containing valuable proprietary data on January 30, 2009, the day he terminated his employment with OSIT. (Rec. Doc. 36 at 2). OSIT hired a local computer service provider in order to locate the data on Dupre's hard drive and the provider discovered Dupre had taken copies of the files with him when he left the company, in violation of the Confidentiality Agreement and corporate policy.[3] *Id.* at 2-3. The plaintiffs allege that Dupre, with the assistance of Brown, used the proprietary information to benefit Thunder Oilfield, to induce OSIT employees to join Thunder Oilfield, and to induce OSIT customers to divert their business away from OSIT to Thunder Oilfield. *Id.* at 3-4. The plaintiff seeks damages from the defendant for the economic loss and damages caused by the defendants' action. *Id.* at 4.

## II. Failure to State a Claim and Federal Question Jurisdiction[4]

Defendants Dupre and Brown move to dismiss plaintiffs' claims under the CFAA for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or in

---

[2] Dupre also signed an Assignment Agreement, which contains many similar provisions to those in the Confidentiality Agreement. (Rec. Doc. 1 at 3).
[3] In addition, Dupre's alleged actions violated the Assignment Agreement. (Rec. Doc. 1 at 7-8).
[4] The Court has chosen to address the 12(b)(6) motion before addressing the 12(b)(1) motion, because granting the 12(b)(6) motion would deprive the court of federal question jurisdiction. Diversity jurisdiction is discussed *infra*.

the alternative, to dismiss the plaintiffs' Original and Amended Complaints for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. (Rec. Doc. 26). The standard of review for a Rule 12(b)(6) motion is the same as that for a Rule 12(b)(1) motion. *United States v. City of New Orleans,* 2003 WL 22208578, at *1 (E.D.La. Sept. 19, 2003). The court may not dismiss a claim unless it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Benton v. U.S.,* 960 F.2d 19, 21 (5th Cir. 1992). *See also In re Supreme Beef Processors, Inc.,* 468 F.3d 248, 251 (5th Cir. 2006). Courts grant motions to dismiss infrequently and have wide discretion to do so, which ensures the plaintiff's right to adjudicate their claim on the merits is not wrongly denied. 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1349 (3d ed. 2004). The complaint must be construed in the light most favorable to the plaintiff, accepting as true the well-pleaded material allegations and any reasonable inferences that can be made from them. *See Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir. 1982). Before factual allegations are accepted as true, they "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal,* -- U.S. __, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

An individual may bring a civil cause of action for damages or loss arising from CFAA violations under 18 U.S.C. § 1030(g). *Fiber Systems Intern., Inc., v. Roehrs,* 470 F.3d 1150, 1156-57 (5th Cir. 2006). Section 1030(g) provides in relevant part:

> Any person who suffers damages or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought *only if* the conduct involves 1 of the factors set forth in clause (I), (II), (III),

3

(IV), or (V) of subsection (c)(4)(A)(i). Damages for a violation involving conduct described in subsection (c)(4)(A)(i)(I) are limited to economic damages.

18 U.S.C. § 1030(g) (emphasis added).[5] The Court reads the plaintiffs' facts as most closely aligning with subsection (c)(4)(A)(i)(I),[6] which refers to a "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(I). The CFAA defines "damage" as: "any impairment to the integrity or availability of data, a program, a system or information." 18 U.S.C. § 1030(e)(8). It also defines "loss" as: "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred *because of interruption of service*." 18 U.S.C. § 1030(e)(11) (emphasis added).

District courts in Louisiana have split over the CFAA's definition of loss.[7] Although the Fifth Circuit has not yet ruled on this issue, the Second Circuit and several district courts have held that lost revenues must be coupled with an "interruption of service" under the CFAA. *See Nexans Wires S.A. v. Sark-USA, Inc.,* 166 Fed.Appx. 559 (2d Cir. 2006) (holding that the statute's language treats lost revenue as a different concept from incurred costs, thus loss of business due to the defendants' use of proprietary information was not covered by the CFAA). *See also L-3 Communs. Westwood Corp. v. Robicharux,* 2007 WL 756528, at *11 (E.D.La. Mar.

---

[5] The five factors of subsection (c)(4)(A)(i) are: (I) loss to one or more persons during any one-year period . . . aggregating at least $5,000 in value; (II) the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of one or more individuals; (III) physical injury to any person; (IV) a threat to public health or safety; or (V) damage affecting a computer system used by or for a government entity in furtherance of the administration of justice, national defense, or national security. 18 U.S.C. § 1030(c)(4)(A)(i).

[6] Plaintiffs in their complaint do not allege the specific clause that has been violated by the defendants, but they have clarified in their memoranda that they allege injuries under Section (c)(4)(A)(i)(I). (Rec. Doc. 28 at 4).

[7] *See L-3 Communs. Westwood Corp. v. Robicharux,* 2007 WL 756528 (E.D.La. Mar. 8, 2007) (holding that lost revenues sustained by plaintiffs must result from an interruption of service). *But see Frees, Inc. v. McMillian,* 2007 WL 2264457 (W.D.La. Aug. 6, 2007) (concluding that the CFAA does not limit recovery of lost profits to instances where there was an interruption of service).

8, 2007) (citing *Civil Ctr. Motors, Ltd. v. Mason Street Import Cars, Ltd.,* 387 F. Supp. 2d 378, 382 (S.D.N.Y. 2005) ("[C]osts not related to computer impairment or computer damages are not compensable under the CFAA.")).[8] This Court chooses to adopt their rationale, because not doing so would render the language "because of an interruption of service" in § 1030(e)(11) inoperative and would violate elementary principles of statutory interpretation. *See United States v. Nordic Village, Inc.,* 503 U.S. 30 (1992).

In the plaintiffs' complaint, they allege that they were forced "to hire a local computer service provider to make a complete back-up of Dupre's hard drive on his company-issued laptop computer," and that "Dupre's conduct in misappropriating [the plaintiffs'] confidential and proprietary data has caused an economic loss to OSIT and OSSS in a one-year period that exceeds the $5,000 jurisdictional threshold requirement" under the CFAA. (Rec. Doc. 36 at 2-4). They further allege that "the actions of Dupre and Brown . . . have caused and continue to cause significant damage to OSIT and OSSS." (Rec. Doc. 36 at 4). Although plaintiffs have sufficiently pled "damage" within the meaning of §§ 1030(a)(5)(c) & (e)(8),[9] it is not clear from the complaint that the plaintiffs have stated specific facts upon which their alleged "loss" is based. Plaintiffs claim to have hired a local services provider to locate the deleted data, (Rec. Doc. 36 at 2), but they have not alleged that the reasonable cost of assessing and restoring the

---

[8] Some courts disagree on the definition of "loss" under the CFAA and have held that it is sufficient to plead unauthorized access and use of proprietary information. *See, e.g., Sw. Airlines Co. v. Farechase, Inc.*, 318 F. Supp. 2d 435, 439 (N.D.Tex. 2004) (complaint that alleged $5,000 loss sufficiently pled claim under the CFAA); *H & R Block E. Enter., Inc. v. J & M Secs., LLC,* No. 05-1056, 2006 WL 1128744, at *4 (W.D.Mo. Apr. 24, 2006) (complaint alleging that "unlawful and unauthorized access and use of . . . confidential customer information" caused the plaintiff to suffer at least $5,000 in damages, including response costs, was sufficient to survive motion to dismiss). Other courts have held that lost revenues do not need to be accompanied by an interruption of service in order to be recoverable. *See, e.g., Frees, Inc. v. McMillian,* 2007 WL 2264457, at *3 (W.D.La. Aug. 6, 2007) ("[T]he CFAA does not limit the recovery of lost profits as an element of compensatory damages solely to instances where there was an interruption of service.").
[9] Pleading "damage" does not establish "loss" under subclause (I) of subsection (c)(4)(A)(i).

data reached the $5,000 jurisdictional threshold.[10] In the affidavit of Robert S. Nelson, he claims that OSSS had to redevelop the misappropriated data "at great expense" and that both OSSS and OSIT have "lost valuable management time and resources to investigate, document and remedy the injuries caused to them." (Rec. Doc. 21-6 at 5, 8). However, the plaintiffs in their complaint offer no specific costs that would total an amount exceeding $5,000. 18 U.S.C. § 1030(c)(4)(A)(i)(I).

The plaintiffs also allege that the conduct of Dupre in misappropriating the proprietary data has caused them economic loss, but they fail to plead that the "interruption of service" caused their consequential damages as is required by a plain reading of § 1030(e)(11). 18 U.S.C. § 1030(e)(11); *see, e.g., Klein & Heuchan, Inc. v. CoStar Realty Info., Inc.,* 2009 WL 963130, at *3 (M.D.Fla. Apr. 8, 2009) (citing *Cenveo Corp. v. CelumSolutions Software GMHB & Co.,* 504 F.Supp.2d 574, 581 (D. Minn. 2007)). Furthermore, the losses alleged by the plaintiffs are not revenue lost because the plaintiffs' computers were damaged or inoperable, but were incurred due to the manner in which the defendants used the data afterwards. (Rec. Doc. 36 at 3-4). Since the plaintiffs have not sufficiently pled that their asserted lost revenue and other consequential damages occurred "*because of* an interruption of service" in this case,[11] they are not cognizable losses under the CFAA. 18 U.S.C. § 1030(e)(11) (emphasis added).

Defendants also allege in their memoranda that the plaintiffs have failed to plead: (1) that plaintiffs' computers were protected within the contemplation of the statute, (2) that the

---

[10] Plaintiffs only allege that they hired a local services provider to perform a hard-drive backup of a singular laptop, an expense that likely pales in comparison to the consultation and forensics work that met the $5,000 jurisdictional threshold in *Frees*. *See Frees, Inc. v. McMillian,* 2007 WL 2264457, at *3 (W.D.La. Aug. 6, 2007). Assessing and restoring the data is a "reasonable cost." *Id.* ("The cost of hiring an expert to investigate the computer damage is clearly a "reasonable cost" sufficient to constitute "loss" under the CFAA.")

[11] Even though the plaintiffs have pled sufficient facts to show there was an interruption of service, it is plainly clear that the resulting lost revenue, and the awarding of the prospective contract to Thunder Oilfield, did not occur "*because of*" the plaintiffs' temporary inability to access the defendants' emails, but rather due to the alleged misappropriation of confidential data by the defendants. 18 U.S.C. § 1030(e)(11) (emphasis added); (Rec. Doc. 36 at 3-4).

defendants intentionally caused damage to plaintiffs' computers, or (3) that the defendants accessed the computer without authorization. (Rec. Doc. 26-1 at 4). Under § 1030(a)(5)(C), "[w]hoever . . . intentionally accesses a protected computer without authorization, and as a result of such conduct causes damage and loss" may be punished. The Court finds that although the plaintiffs have not explicitly alleged in their complaint that the computer was protected within the contemplation of the CFAA, it is reasonable to infer that a computer containing emails with valuable proprietary information of OSSS and OSIT is a computer that is "used in or affecting interstate or foreign commerce or communication . . . ." 18 U.S.C. § 1030(e)(2)(B); (Rec. Doc. 36 at 2). However, the plaintiffs do not specify the section of the CFAA constituting the alleged violation nor do they claim that that the defendants' conduct was intentional. Regarding the last claim, the plaintiffs have sufficiently pled that Dupre deleted the files "without the knowledge, authorization, or permission of OSIT or OSSS . . . ." (Rec. Doc. 36 at 2).

The plaintiffs have failed to state a valid claim under the CFAA because they have not clearly established that they have suffered "losses" as defined by § 1030(e)(11) that reach the $5,000 jurisdictional threshold of § 1030(c)(4)(A)(i)(I) and they have not alleged that the defendants' conduct was intentional. Their failure to state a claim deprives the Court of federal question jurisdiction under 28 U.S.C. § 1331.

### III. Diversity Jurisdiction

In their complaint, the plaintiffs allege several state law breach of contract and tort claims, which they assert fall under this Court's ability to exercise diversity jurisdiction based upon Article III, § 2 of the Constitution and 28 U.S.C. § 1332. "Article III, Section 2 of the Constitution authorizes federal jurisdiction in controversies 'between a State, or the Citizens

thereof, and foreign States, Citizens or Subjects,'" *Smith v. Carter,* 5454 F.2d 909, 911 (5th Cir. 1977), and § 1332(a) provides, in relevant part:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States . . . [and] citizens of a State and citizens or subjects of a foreign state.

28 U.S.C. 1332(a). According to the Fourteenth Amendment to the Constitution, anyone who is born or naturalized in the United States is a citizen "of the United States and of the State wherein they reside." U.S. CONST. amend. XIV, § 1. "However, 'reside' has been interpreted to mean more than to be temporarily living in the state; it means to be 'domiciled' there." *Coury v. Prot,* 85 F.3d 244, 248 (5th Cir. 1996). State citizenship, for the purposes of diversity jurisdiction, is synonymous with domicile. *Id.* at 249. Therefore, a United States citizen who is domiciled abroad "is not a citizen of any state of the United States, and cannot sue or be sued in federal court on the basis of diversity jurisdiction." 13E Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3602 (3d ed. 2009).

District courts can look into their subject matter jurisdiction over a controversy at any stage of the proceedings. *See Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir. 1980). Courts faced with making a jurisdictional assessment are not limited to the pleadings, but may instead look to any record evidence or affidavits concerning the citizenship of the parties. *Coury,* 85 F.3d at 249; *see also Jones v. Landry,* 387 F.2d 102 (5th Cir. 1967). Once a person's domicile is established at the time they are born or naturalized in the United States, it persists until a new one is acquired or the old one is clearly abandoned. *Mas v. Perry,* 489 F.2d 1396 (5th Cir.), *cert. denied,* 419 U.S. 842 (1974). Generally, a change in domicile requires the concurrence of: (1) physical presence at the new location and (2) an intention to remain there indefinitely. 13E Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice*

*and Procedure* § 3613 (3d ed. 2009). In *Coury v. Prot,* the Fifth Circuit provided the proper analysis that district courts should undergo for a "domicile" inquiry:

> In determining a litigant's domicile, the court must address a variety of factors. No single factor is determinative. The court should look to all evidence shedding light on the litigant's intention to establish domicile. The factors may include the places where the litigant exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family.

*Coury,* 85 F.3d at 251. A litigant's statement of intent, although relevant, is accorded little weight if it conflicts with the objective facts. *Id.* (citing *Freeman v. Northwest Acceptance Corp.,* 754 F.2d 553, 556 (5th Cir. 1985)). Defendants here have made a "factual attack" challenging the existence of subject matter jurisdiction in fact, by alleging that defendants Dupre and Brown are domiciliaries of Thailand and therefore that this Court lacks diversity jurisdiction over them. (Rec. Doc. 9-2 at 2). This Court will address the domicile of each defendant in turn.

Defendants argue that Dupre should be considered domiciled in Thailand for diversity purposes. They point out in their memoranda that Dupre has lived in Thailand since 2002, that he and his son reside in Thailand and that he has no intention of returning to Louisiana. (Rec. Doc. 9-2 at 12). In Dupre's affidavit, he claims that currently owns no property in Louisiana, that he rents a home in Thailand,[12] and that he considers his domicile to be that of Thailand since he plans to remain there indefinitely. (Rec. Doc. 19-2 at 2). Plaintiffs urge that Dupre should be considered a domiciliary of Louisiana since he was born in Louisiana, he has never sought to become a permanent resident of Thailand, he is working in Thailand under a temporary work permit, he has obtained reissuance of his Louisiana driver's license, he maintains a bank account in Louisiana where his payroll checks are deposited, and he maintains both a motorcycle and a

---

[12] Dupre alleges that he rents a home instead of owns because the "Thailand government does not allow foreigners to own property." (Rec. Doc. 19-2 at 2). Defendants' memorandum states that Dupre owned his home instead of rented, but the Court will assume that Dupre's own affidavit is the accurate statement. (Rec. Doc. 9-2 at 12).

pickup truck in Louisiana. (Rec. Doc. 21-2 at 8-9). Furthermore, the plaintiff stated in a divorce proceeding with his former wife in a Louisiana state court that he "is attempting to make plans to move back to the United States," which contradicts Dupre's own statement of intent in his affidavit. (Rec. Doc. 21-2 at 10) (internal quotations omitted).

The Court finds that Dupre's domicile continues to be in Louisiana. Despite his physical presence in Thailand, Dupre's statement of his intention to reside there indefinitely conflicts with many objective facts. Dupre's continued maintenance of personal property and bank accounts in Louisiana, coupled with his prior statement claiming an intention to move back to the United States, suggests that he does not have the requisite intent to establish his domicile in Thailand. Because Dupre has not demonstrated that he has clearly abandoned his old domicile, *Coury,* 85 F.3d at 250, we hold that Dupre continues to be a domiciliary of Louisiana for diversity purposes.

Defendants also argue that Brown should be considered domiciled in Thailand for diversity purposes. They point out in their memoranda that Brown has lived in Thailand since 1995 and that he owns a home in Thailand. (Rec. Doc. 9-2 at 14). In Brown's own affidavit, he claims that he was born in Singapore,[13] he has citizenship in both Thailand and the United States, he considers his domicile to be Thailand, and he has plans to remain there indefinitely. (Rec. Doc. 19-3 at 1). Plaintiffs in their memoranda do not dispute any of the defendants' factual allegations that Brown is domiciled in Thailand, but instead they simply assert in their complaint that Brown is a citizen of California who resides in Thailand. (Rec. Doc. 1 at 1).

The Court finds that Brown is a domiciliary of Thailand for diversity purposes. All of the evidence points to the conclusion that Brown meets the concurrent requirement of having both

---

[13] Defendants' memorandum states that Brown was born in California, but the Court will assume that Brown's own affidavit is the accurate statement. (Rec. Doc. 9-2 at 14).

(1) a physical presence in Thailand and (2) and intention to remain there indefinitely. 13E Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3613 (3d ed. 2009). Furthermore, there is no evidence suggesting that he has not clearly abandoned his California citizenship. *Coury,* 85 F.3d at 250. Since Brown is a U.S. citizen domiciled abroad, he cannot be sued in federal court on the basis of diversity jurisdiction. 13E Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3602 (3d ed. 2009). Additionally, since both Brown and OSIT are domiciled in Thailand for the purposes of diversity jurisdiction, there is no complete diversity between the adverse parties. *See Mas,* 489 F.2d at 1399 ("[N]o party on one side may be a citizen of the same State as any party on the other side."). Plaintiffs have not proven by a preponderance of the evidence that this Court has subject matter jurisdiction. *See Paterson v. Weinberger,* 644 F.2d 521, 523 (5th Cir. 1981).

Accordingly,

IT IS ORDERED that the motion to dismiss filed by Travis P. Dupre and Donald J. Brown is GRANTED. (Rec. Doc. 26).

IT IS FURTHER ORDERED that the motion to dismiss as it pertains to personal jurisdiction and *forum non conveniens* is DISMISSED without prejudice. (Rec. Doc. 26).

IT IS FURTHER ORDERED that this order will become effective in 10 days in order to allow an opportunity for amendment with regard to federal question jurisdiction if appropriate.

New Orleans, Louisiana, this 21st day of June, 2010.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE